### PEOPLE v. SEATON.

*(Supreme Court, General Term, First Department. June 26, 1891.)*

1. RECEIVING STOLEN GOODS—PROOF OF LARCENY.

On an indictment for feloniously receiving two bars of silver, of the value of $1,000 each, knowing the same to have been stolen, it appeared that 100 bars of silver had been put in charge of a truckman to be carried from a bank to a dock. The bars were placed in rows on the floor of the truck, and the truckman and the driver were the only persons on the truck. It was about 6 o'clock in the evening (December 20th) when the truck started from the bank. The driver testified that it was foggy, but not very dark. When the truck reached the dock, two of the bars had disappeared. There was evidence that the arrangement of the truck made it possible for the bars to slide off. One G. testified that about 6:30 o'clock on the same evening two men came to his junk store, bringing two pieces of stuff that he thought was solder, and which he bought for $14. The pieces were dirty, as if they had been lying in the street. Afterwards G. and others sold the two pieces of stuff, which were shown to be the lost bars of silver, to defendant for $650. *Held*, that there was not sufficient evidence that the silver had been stolen to convict defendant of receiving stolen goods.

**2. SAME—LOST GOODS.**
      In such case the witness G. testified that he and defendant, before the sale of the
      silver to defendant, read together a statement in a newspaper which evidently re-
      ferred to the silver in question, but the newspaper article was not introduced in
      evidence. *Held*, that the evidence did not show an appropriation by defendant of
      lost property found under such circumstances as gave him knowledge or means of
      inquiry as to the true owner, within Pen. Code N. Y. § 539, which declares such
      appropriation to be larceny.

Appeal from court of general sessions, New York county.

Charles Seaton was indicted for receiving stolen goods, and from a judg-
ment of conviction he appeals.

Argued before VAN BRUNT, P. J., and BARRETT and BARTLETT, JJ.

*Frederick B. House*, for appellant.  *McKenzie Semple*, for respondents.

BARTLETT, J.   The indictment charges the defendant with having feloni-
ously received, knowing the same to be stolen, two silver bars of the value
of $1,000 each, which belonged to one John F. Barkley, from whom they had
been "feloniously stolen, taken, and carried away" by Edward Rock, Thomas
Dugan, John Keenan, and certain other persons to the grand jury unknown.
This act is charged as a second offense, it being alleged that the defendant
was formerly convicted of grand larceny, and sentenced to a term of imprison-
ment, which he served out.   The former conviction for grand larceny was
admitted upon the trial of the present case.   No testimony whatever was in-
troduced in behalf of the defendant, and the main question arising upon this
appeal is whether the evidence offered on the part of the prosecution was suf-
ficient to warrant a conviction.   On December 20, 1889, John F. Barkley, a
truckman, took a truck-load of silver bars from the American Exchange Bank
in the city of New York to the Cunard dock on the North river, at the foot
of Clarkson street.   The load consisted of 101 bars when the truck left the
bank, at about 25 minutes before 6 o'clock in the afternoon.   Upon arrival at
the wharf, about 10 minutes past 6, two of the bars were missing.   The bars
had been arranged in rows on the floor of the truck in one layer, and com-
pletely covered the floor, so as to leave only just room for the feet of the
driver.   Mr. Barkley and the driver were the only persons upon the truck, so
far as appears, during the journey.   The driver says it was foggy, but not
very dark, when they started from the bank.   Mr. Barkley says it was dark
when they arrived at the Cunard dock.   There he found that the bars had
slid down, and that there was a broken space where the bars were missing
from the rear of the truck.   As I understand his testimony, the construction
of the truck and its arrangement on this occasion were such as to render it
quite easy, in the absence of very watchful care, for some of these silver bars
to slide off into the street.   "In order to take this heavy load on that day,"
he says, "we put the tail-rack back a certain distance,—about six inches from
the end of the floor of the truck,—leaving seven and a half inches exposed on
either side of our truck, behind the hind wheels, and between the line where
the tail-rack goes across and the end of the side-rack."   At the time the two
silver bars thus disappeared, one William Gilmartin carried on the business
of a junk dealer at No. 458 Washington street.   He was called as a witness
for the prosecution, and testified that about the 20th of December, before
half past 6, Thomas Dugan and a man named Rock came into his place bring-
ing two pieces of stuff which he thought was solder, and which he purchased
from them for $14.   The lumps of stuff "were dirty, the same as if they were
lying in the street."   The next day Gilmartin read some statement in a news-
paper which apparently referred to the objects he had bought, whereupon he
sent them to a liquor store in the neighborhood, and there put them in a safe.
Subsequently Gilmartin, together with Rock and Dugan, all apparently act-
ing together, sold the bars to the defendant for $650.

I do not think there is any serious question in the case as to the identity of

the bars. That the bars thus sold to the defendant were the silver bars from Barkley's truck seems to me to be established beyond a reasonable doubt. I think the evidence also indicates very clearly that the defendant knew that the bars were not the property of the men from whom he purchased them. The difficulty in the way of the prosecution is in the testimony relied upon to show that the property had been stolen. The indictment alleges a felonious taking. Is it sustained by the proof in this respect? I am unable to answer this question in the affirmative. It seems to me not only that there is an entire absence of any proof of theft from the truck while in transit, but that the evidence all tends to show that the silver was lost off the vehicle in the course of the journey. There were two men on the truck,—the driver and Mr. Barkley,—and the driver swears that there was no one else on the truck with him at any time. In the presence of these two persons, presumably exercising some degree of watchfulness over the silver under their charge, it is extremely improbable that any one should have ventured to jump on the wagon, or so approach it as to be able to seize and carry off any portion of the load. On the other hand, there was a place where the bars might well slip off unobserved,—an opening at the side, towards the rear of the truck,—and the probability that they did thus slip off is strengthened by the testimony of Gilmartin as to their dirty condition when brought to him by Rock and Dugan. At that time it is tolerably certain that neither Rock nor Dugan had any idea that the bars were silver, since they agreed to part with them for $14; and this fact also militates strongly against the theory of a felonious taking from the truck.

The trial was conducted, however, on the assumption by the court and the counsel for the prosecution that it was not necessary to prove a felonious taking at all, although that was the only form of larceny alleged in the indictment. The jury were told, in substance, that it would be enough, so far as that branch of the case was concerned, if the proof established the statutory larceny defined in section 539 of the Penal Code, which reads as follows: "A person who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person who is not entitled thereto, without first having made every reasonable effort to find the owner and restore the property to him, is guilty of larceny." A careful examination of the minutes of the trial, as set out in the appeal-book, satisfies me that the proof fails to show a misappropriation of the silver bars as lost and found property under this section, just as it fails to show any taking which would have been larceny at common law Assuming, as seems altogether probable, that the bars were lost in the street by sliding off the floor of the truck through one of the side openings, and that they were subsequently found on the pavement by Rock and Dugan, there is no evidence that the finding was under circumstances which would give them knowledge or means of inquiry as to the true owner. It may be said that when they resumed control of the property after Gilmartin had seen some notice in a newspaper, and when they participated with Gilmartin in the sale to defendant Seaton, they brought themselves within the terms of section 539, because circumstances had then occurred which indicated the true ownership of the silver. There would be much force in this argument if the learned assistant district attorney, who conducted the prosecution, had laid before the court and jury the newspaper notice which Gilmartin testified that he had read, and which, according to his testimony, was read by Dugan, Rock, and Seaton, "between them," prior to the sale for $650 to Seaton. This notice, however, was not put in evidence. It may very well be that it contained information which, if communicated to Dugan and Rock, rendered them liable for the felonious misappropriation of found property; but, without knowing what were its contents, we cannot say that such was its legal effect. Convictions in criminal cases must be founded.

upon competent proof, not upon guess-work or speculation as to the contents of papers which are shown to a witness on the stand, but not introduced in evidence or exhibited to the jury. Only two theories of the case were presented to the jury for their consideration,—one that the property was feloniously taken; the other that it was lost, and retained by the finders under such circumstances as to make them guilty of a statutory larceny. In neither view does it seem to me that the proof was sufficient to sustain a conviction, and I am therefore in favor of reversing the judgment and granting a new trial.

All concur.